IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES R. HENDERSON**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-3935-L** |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17), filed January 17, 2013. On April 23, 2013, the motion was referred to United States Magistrate Judge Paul D. Stickney for findings and recommendation (Doc. 29). The court **vacates** the order of reference (Doc. 29). After carefully considering the motion, briefing, pleadings, and applicable law, the court concludes that all of the claims asserted, except for Plaintiff's contract and wrongful debt collection claims, fail as a matter of law. The court therefore **grants in part and denies in part** Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17) and **dismisses with prejudice** all of Plaintiff's claims except his contract and wrongful debt collection claims that pertain to the allegedly improper placement of insurance on his escrow account and related charges for such insurance before Plaintiff filed for bankruptcy in September 2009. The court also **denies** Wells Fargo's motion to dismiss Plaintiff's request for an accounting as premature.

## I.      Procedural and Factual Background

This is a mortgage foreclosure case that was originally brought by Plaintiff James R. Henderson ("Henderson" or "Plaintiff") on September 27, 2012, in the 14th-A District Court, Dallas County, Texas, against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant").   On September 30, 2012, Wells Fargo removed the case to federal court based on diversity and federal question jurisdiction.   In his First Amended Complaint ("Complaint"), Henderson alleges claims for breach of contract, negligence, fraud, and negligent misrepresentation.   He also asserts claims, based on alleged violations of the Texas Debt Collection Practices Act ("TDCPA"), the Texas Deceptive Trade Practices Act ("DTPA), the Residential Settlement and Procedures Act ("RESPA"), and the False Claims Act ("FCA").   Henderson seeks an accounting, economic damages, punitive or treble damages for mental anguish, attorney's fees, costs of court, and any other relief to which he may be entitled.   Defendant moved to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in support of its motion, submitted copies of the original promissory note ("Note") and deed of trust ("Deed") referred to in Plaintiff's Complaint.

The property ("Property") at issue is located at 6903 Robin Willow, Dallas, Texas, 75248, which was purchased by Henderson in March 1978.   In January 2003, Henderson obtained a home equity loan in the amount of $187,500 from World Savings Bank ("WSB").   Henderson alleges, on information and belief, that WSB subsequently merged with "Wachovia Bank," which in turn merged with Wells Fargo.   Pursuant to the Note executed by Henderson, he was required to make monthly payments of principal and interest in the amount of $1,228.62.   Henderson alleges that the Note and Deed do not require escrow taxes and insurance. Pl.'s Compl. 3, ¶ 7.

Starting in 2008 and 2009, Henderson experienced financial difficulties but continued to make monthly mortgage payments in the original amount due under the Note.  In March and June 2009, Wells Fargo requested Henderson to provide proof of insurance for the Property.  Both times, Henderson responded by providing a copy of the insurance policy for the Property.

On September 1, 2009, Wells Fargo sent Henderson an "Annual Escrow Account Disclosure Statement," notifying him that his payment would increase from $1,228 to $1,630 because Wells Fargo had made $4,481.75 in escrow advances for property insurance.  Pl.'s Compl. 4.  Henderson disputed the establishment and requirement of an escrow account and placement of insurance on the escrow account, provided a copy of the insurance policy that he had obtained for the Property, and requested Wells Fargo to remove the property insurance amount from his escrow account. He nevertheless continued paying the original mortgage payment of $1,228 each month.

On November 11, 2009, Henderson filed for Chapter 7 bankruptcy protection.  One week later, Wells Fargo notified Henderson that his monthly payment was going to increase to $2,859.42, and that he owed a total of $14,920.28 for escrow advances made by Wells Fargo.  Henderson believed that  amount claimed to be owed by Wells Fargo was an error.  He therefore contacted Wells Fargo regarding the perceived error and was directed to Wells Fargo's bankruptcy department, which was unable to answer his questions about the escrow account and amount due.  Henderson was unable to pay the increased monthly amount but continued to make monthly payments of the original amount under the Note, plus an unspecified additional sum each month.

From 2009 to 2012, when the instant litigation was commenced, Henderson disputed the escrow amounts claimed to be due and owing for insurance and property taxes, and contacted Wells Fargo numerous times by telephone and in writing.  He also spoke personally with a Wells Fargo

branch manager, who was unable to resolve the issue with his escrow account. Henderson alleges that Wells Fargo repeatedly acknowledged his requests for information and told him that it would look into the issue and get back to him.  According to Henderson, however, Wells Fargo was never able to resolve the discrepancy in his escrow account to his satisfaction.  Henderson alleges that Wells Fargo provided information regarding his account that included amounts due and charges for "tax penalties," but that these amounts and charges conflicted with prior figures provided by Wells Fargo, as well as Dallas County property tax records and the 1099 tax form that he received from Wells Fargo.  Pl.'s Compl. 8.

In May 2010, and again on September 29, 2010, and October 4, 2010, Henderson attempted unsuccessfully to apply for two different types of loan modifications. Wells Fargo denied having any record of the first application and did not acknowledge the second request by Henderson for a loan modification.  On May 27, 2010, Wells Fargo sent Henderson a "Notice of Intent to Foreclose" and letter, stating that it had not received payments for the prior three months or only partial payments. Henderson believed that this statement of his account was inaccurate because he had made three prior payments of $1,630, and the payments had cleared his bank account.  On June 28, 2010, Wells Fargo notified Henderson that he was in default and needed to pay $9,626.94 to reinstate the loan. Henderson again disputed the amount owed by telephone and in writing.

Henderson alleges that on July 25, 2010, he mailed a check to Wells Fargo in an unspecified amount for his "monthly mortgage payment" and another letter disputing the escrow amounts and the manner in which his payments were being applied.   Pl.'s Compl. 9, ¶ 32.  On July 30, 2010, Wells Fargo returned the check, stating that the funds were insufficient to reinstate the loan. Henderson immediately responded in writing to no avail.

On October 11, 2010, Wells Fargo accelerated the amount due under the Note and initiated a judicial foreclosure proceeding in state court.  On February 3, 2011, Henderson again resorted to bankruptcy, this time under Chapter 13 of the bankruptcy code, but he ultimately dismissed the bankruptcy proceeding on April 6, 2012, and filed the instant action against Wells Fargo.  For the reasons herein discussed, the court concludes that Wells Fargo's motion to dismiss should be granted in part and denied in part.

## II.     Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer

more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.

*R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III.   Analysis

### A.   Preemption Under the Home Owners' Loan Act

Wells Fargo contends that all of Henderson's claims are preempted by the Home Owners' Loan Act ("HOLA"). Henderson counters that, although his loan was originated with WSB, a federal savings bank, Wells Fargo is not entitled to protection under HOLA because the statute only protects federal savings banks, and Wells Fargo is a national bank, not a federal savings bank or institution. Henderson further asserts that Wells Fargo's status as successor in interest to Henderson's loan as a result of the merger with Wachovia does not change this fact. For support, Henderson relies on *Gerber v. Wells Fargo Bank, N.A.*, No. 11-01083-PHX-NVW, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012). Henderson therefore contends that his state claims are not governed by HOLA.

Wells Fargo contends in its reply that, in essence, it is WSB, the original lender, as a result of the merger. Wells Fargo also notes that, according to Plaintiff's Complaint, this dispute arose in September 2009 when Wachovia was a federal savings bank governed by HOLA. Defendant requests that the court take judicial notice that WSB changed its name to Wachovia Mortgage, FSB, which later merged with Wells Fargo in November 2009. Based on information available on a website operated by the Federal Deposit Insurance Corporation ("FDIC"), Wells Fargo maintains that information regarding its status as the successor to WSB by merger is a matter of public record. To show that judicial notice of such facts is appropriate and that HOLA applies to successors of federal savings banks that are not federal savings banks themselves, Wells Fargo cites *Olaoye v. Wells Fargo Bank, NA*, No. 4:11-CV-772-Y, 2012 WL 1082307, at *3 (N.D. Tex. Apr. 2, 2012).[1]

As noted by the parties, the Fifth Circuit has not addressed whether an entity, such as Wells Fargo, that acquires a mortgage by merger or acquisition with a federal savings institution is entitled to the same protection under HOLA as the originating bank even though it is not a federal savings institution itself. In *Gerber*, the case cited by Henderson, the court rejected Wells Fargo's argument that "HOLA preemption 'sticks' to any loan originating with a federal savings bank." *Gerber*, 2012 WL 413997, at *3. The *Gerber* court reasoned:

> The plain language of § 560.2 demonstrates that this argument is without merit. HOLA preempts "state laws affecting the operations of federal savings associations" and leaves room for state laws that "only incidentally affect the lending operations of Federal savings associations." Application of the Consumer Fraud Act to Wells Fargo would not affect the "operations" of a federal savings

---

[1] Wells Fargo also quotes *Ogundipe v. Wells Fargo Bank, N.A.*, H-11-2387, 2012 WL 3234211, at *1 (S.D. Tex. Aug. 6, 2012), for the proposition: "It is undisputed that World Savings Bank changed its name to Wachovia Mortgage, and that Wachovia Mortgage subsequently merged into Wells Fargo." Def.'s Reply 3-4. *Ogundipe*, however, arose in the summary judgment context and did not involve a request for the court to take judicial notice of such facts.

association   and especially not the "lending operations"   because Wells Fargo is not a federal savings association.

Wells Fargo has nonetheless cited several cases stating that Wells Fargo enjoys the HOLA preemption enjoyed by World Savings and Wachovia. But as authority for that proposition, these [federal district court cases in California] cite either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire. But preemption is not some sort of asset that can be bargained, sold, or transferred. HOLA preemption was created by the OTS for the benefit of federal savings associations, and § 560.2 plainly seeks to avoid burdening the operations of federal savings associations. Wells Fargo is not a federal savings association, and its cited cases are therefore not persuasive. HOLA preemption does not apply to Wells Fargo.

*Id.* at *3-4.

In *Olaoye*, the case relied on by Wells Fargo, the court concluded that HOLA applied to Wells Fargo, reasoning that: "[A]lthough Wells Fargo itself is not subject to HOLA and [the Office of Thrift Supervision ("OTS") ] regulations, HOLA nonetheless applies to this action because Henderson's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations." *Olaoye*, 2012 WL 1082307, at *3 (citation omitted).  For support, *Olaoye* cites and quotes *Khan v. World Savings Bank, FSB*, No. 10-CV-04305-LHK, 2011 WL 133030, at *2 (N.D. Cal. Jan. 14, 2011).  *Khan* in turn cites another federal district court case in California that reaches the same conclusion, but it cites no authority.

The court believes that the better approach is that taken by *Gerber*, as it is based on the plain language of the statute. The court therefore respectfully declines to follow and apply the reasoning in *Olaoye*.  Thus, assuming without deciding whether it would be appropriate to judicially notice the facts pertaining to Wells Fargo's acquisition of Henderson's loan,[2] the court concludes that HOLA

---

[2] Judicial notice is appropriate when a fact "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

preemption does not apply to Henderson's state claims against Wells Fargo, and dismissal on this ground is improper.[3]  Even if the court determined that HOLA applied to this case, it is not convinced that dismissal of Henderson's contract and tort claims under HOLA is proper because such claims are generally exempted from preemption under HOLA.  12 C.F.R. § 560.2(c).  As herein explained, however, the court concludes that Henderson's claims, except for certain of his contract and TDCPA claims, fail for other reasons.

### B.      Breach of Contract

#### 1.      Parties' Contentions

In support of his contract claim, Henderson alleges that he tendered performance under the Note by continuing to pay the original amount due under the Note; that he sometimes paid an unspecified amount in addition to the original amount due under the Note; and that Wells Fargo breached the parties' contract (Note and Deed) by: (1) improperly placing insurance on the Property in September 2009; (2) adding an escrow account to his mortgage without his permission or knowledge; (3) adding excessive and erroneous fees to the escrow account and incorrectly applying his payments first to the escrow account and late fees rather than the principal and interest owed under the Note; (4) failing to remove the erroneous disputed charges; (5) declaring him in default; and (6) refusing to accept his July 25, 2010 payment.

---

accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

[3] Until recently, federal savings banks and national banks were subject to different regulatory regimes and preemption standards.  *In re Checking Account Overdraft Litig.*, 880 F. Supp. 2d 1290, 1295-96 (S.D. Fla. 2012).  Federal savings banks were chartered under HOLA and administered by the OTS, whereas national banks were governed by the National Bank Act ("NBA") and overseen by the Office of the Comptroller of the Currency ("OCC").  *Id.*  On July 21, 2010, Congress passed Dodd–Frank legislation that transferred oversight responsibility for federal savings banks from the OTS to the OCC and replaced federal savings banks' broader field preemption with conflict preemption.  *Id.*  The parties do not discuss whether these changes in the law affect the preemption analysis in this case.  The court therefore does not address the issue.

Wells Fargo asserts that Henderson's contract claim fails because: (1) although he alleges that he tendered performance in accordance with the terms of the Note, it is clear from his allegations that he only tendered performance in the form of partial payments that he unilaterally elected to submit in amounts that varied between $1,228.62 and $1,630; (2) after receiving notice that his monthly payments had increased, he refused to pay the additional amounts due under the Note for advances by Wells Fargo for property taxes; (3) although Henderson alleges that Wells Fargo improperly placed insurance on the Property in September 2009, he has failed to allege sufficient facts to show that the insurance policy he purchased and forwarded to Wells Fargo was sufficient to meet the requirements of the Deed; and (4) Henderson admits that he failed to pay property taxes after filing for bankruptcy and, as a result of his bankruptcy filing, Wells Fargo was entitled under the Deed to apply payments made by him to advances owed to Wells Fargo under the Deed.

Henderson counters that when a lender has engaged in inequitable conduct that adversely affects the debtor's ability to tender performance in the form of payment, the debtor is not required to tender or show that the debtor is able to tender the full amount of the debt. Pl.'s Resp. 7, n.26 (citing *Metropolitan Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652-653 (Tex. App.   San Antonio 1988, writ dism'd); and *Shepeard v. Quality Siding & Window Factory*, 730 F. Supp. 1295, 1307 (D. Del. 1990), for the proposition that "equity may allow [a] plaintiff who cannot tender the full amount owed under a note to make monthly payments to satisfy its tender obligation."). Henderson contends that he has alleged substantial inequitable conduct by Wells Fargo that affected his ability to make payments under the Note, including the assessment of numerous excessive and erroneous fees that included charges for property insurance. Henderson

contends that Wells Fargo breached the parties' contract when it unreasonably refused to accept his choice of insurance and charged him for insurance that it allegedly purchased on his behalf. Henderson further asserts that while Wells Fargo may have the right to take reasonable actions to protects its interest in the Property, it was not entitled to assess erroneous fees and could not have reasonably believed that charging erroneous fees was reasonably necessary.

### 2. Texas Contract Law

The elements necessary to sustain a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App.   San Antonio 2007, pet. denied). Under Texas law, "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *Lennar Corp. v. Markel American Ins. Co.*, No. 11-0394, 2013 WL 4492800, at *3 (Tex. Aug. 23, 2013) (concluding that one party's breach does not generally excuse the other's performance unless the breach is material). Texas courts follow the Restatement (Second) of Contracts in determining whether one party has materially breached a contract that would excuse or discharge the other party from performing its contractual duties. *Mustang Pipeline Co.*, 134 S.W.3d at 196. The Restatement identifies five factors for determining whether a party's failure to perform is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id*. at 199 (quoting Restatement (Second) of Contracts § 241 (1981)). The Restatement also sets forth factors that should be considered in determining whether a party's duties are discharged under a contract due to the other party's material breach:

(1) the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements.

(2) the extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

*Mustang Pipeline Co.*, 134 S.W.3d at 199 (quoting Restatement (Second) of Contracts § 242 (1981)).  Whether a breach is material is a question of fact for a jury to decide. *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983).

### 3.      Contract Claim Based on Grounds Other Than Alleged Refusal of Insurance in September 2009

Henderson alleges that the Deed does not require an escrow account.  Pl.'s Compl. 3, ¶ 7. While technically correct, the Note and Deed permit Wells Fargo to require an escrow account "upon written demand by Lender."  Def.'s App. 10.  Specifically, the Deed states with regard to an "Escrow Account":

[N]o escrow shall be required except upon written demand by Lender, in which case, I [Plaintiff] shall pay to Lender on the day payments are due under the Note, until the

Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property. . . (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any.  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account . . . . Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

*Id.*  Henderson's allegation that the escrow account was put into place without his knowledge is also contradicted by his allegation that Wells Fargo notified him on September 1, 2009, that an escrow account had been established.  Pl.'s Compl. 3, ¶ 11.  In this regard, although Henderson also alleges that the escrow account was established without his consent, the Note and Deed do not require Wells Fargo to obtain his consent beforehand.

The Deed also makes clear that if Henderson files for bankruptcy or initiates any legal proceeding that might affect its rights in the Property, Wells Fargo has the right to protect its interest in the Property by taking any action that "it deems reasonable or appropriate to protect [its] rights in the Property." Def.'s App. 13.  The action that Wells Fargo may take includes, but is not limited to, purchasing property insurance.  *Id.*  Henderson admits that he and his wife began experiencing financial difficulties as early as 2008 and filed for bankruptcy on November 11, 2009.  As a result of Henderson's bankruptcy, Wells Fargo was entitled under the Deed to take any action it deemed appropriate to protect its interest in the Property.  Accordingly, *the conduct that forms the basis of Henderson's breach of contract claim that occurred after he filed for bankruptcy is expressly allowed under the Deed.*

**Memorandum Opinion and Order - Page 14**

Further, Henderson acknowledges that he did not tender full performance in that he did not pay the full amount represented by Wells Fargo to be owed, in part because he disputed the debt and in part because he could not afford the increased payments.  Henderson therefore breached his promise to pay under the Note and Deed.  Def.'s App. 2, 10.  Because Henderson did not pay the full amounts represented to be due each month, Wells Fargo was entitled under the Note and Deed to assess late charges, apply payments first to charges and amounts it advanced, immediately accelerate all sums owed under the Note, and institute foreclosure proceedings.  Def.'s App. 4, 11, 18. Henderson's contract claim therefore fail as a matter of law, and Wells Fargo is entitled to dismissal of his contract claim to the extent it is based on theories other than Wells Fargo's alleged refusal of Henderson's choice of insurance before he filed for bankruptcy in November 2009 and defaulted under the Note.

### 4. Whether Equitable Considerations Excused Plaintiff's Performance

The first case relied on by Henderson, *Metropolitan Life Insurance*, dealt with the issue of whether the court should enter a preliminary injunction, and the court is not aware of any case that has applied this rule in determining whether a plaintiff has alleged a valid contract claim for purposes of Rule 12(b)(6). The other case cited by Henderson, *Shepeard*, is also distinguishable because it did not involve the application of Texas law, which Henderson acknowledges applies to his state claims. Accordingly, the court concludes that these cases do not support Henderson's contention that his performance under the Note and Deed was excused.  The court nevertheless determines, as discussed below, that Henderson has stated a valid contract claim, based on his assertion that Wells Fargo breached the contract by unreasonably refusing his choice of insurance before he filed for bankruptcy

in November 2009. Henderson's contract claim based on other grounds, however, fails for the reasons already discussed.

### 5. Contract Claim Based on Alleged Refusal of Plaintiff's Choice of Insurance

According to Henderson's pleadings, Wells Fargo notified him in September 2009 (two months before he filed for bankruptcy) that his payment was going to increase from $1,228 to $1,630 as a result of $4,481.75 in escrow advances for property insurance. Henderson further alleges that, before Wells Fargo obtained property insurance, he twice provided proof of insurance as requested by Wells Fargo, but Wells Fargo did not acknowledge receiving his proof of insurance and never provided him with an explanation as to why his choice of insurance was insufficient or unacceptable. Henderson alleges that Wells Fargo unreasonably refused his choice of insurance and assessed improper charges to his escrow account for insurance in violation of the Deed. Henderson therefore contends that Wells Fargo breached the parties' contract and his performance was excused as a result.

Wells Fargo contends that Henderson's contract claim on this ground fails because has not alleged sufficient facts to show that the property insurance policy that he allegedly purchased and sent to Wells Fargo met the Deed's requirement that it "cover loss or damage caused by fire, hazards normally covered by 'extended coverage' hazard insurance policies and other hazards for which [Wells Fargo] requires coverage." Def.'s Mot. 11 (quoting Def.'s App. 11, ¶ 5). Wells Fargo also contends that Henderson's pleadings as to the insurance obtained are insufficient because they do not state that the insurance was "in the amounts and for the periods of time required by [Wells Fargo.]" *Id.*

Wells Fargo correctly notes that Henderson is obligated as the borrower under the Deed to obtain and maintain property insurance at his sole cost and expense, and that the Deed specifies certain requirements for the insurance coverage obtained.  Def.'s App. 11, ¶ 5.  The court, however, disagrees that Henderson was required to allege with specificity details regarding the type of insurance coverage obtained; rather, the court believes that it is sufficient if he alleges that he performed by obtaining insurance in accordance with the Deed.  Although Henderson does not specifically state that the insurance he obtained complied with the Deed, the court will permit him to amend his pleadings, as this deficiency can be cured by amendment.

Further, as Henderson alleges that Wells Fargo breached the parties' contract first by unreasonably refusing his choice of insurance and wrongfully charging him for insurance *before* he filed for bankruptcy in November 2009 and defaulted under the Note, the issue is whether such alleged breach by Wells Fargo was material.  As noted above, whether a breach is sufficiently material to excuse a party's performance under a contract is a question of fact for a jury to decide.  *Hudson*, 645 S.W.2d at 430.  The court will therefore deny Wells Fargo's motion to dismiss Henderson's contract claim based on Wells Fargo alleged unreasonably refusal of his choice of insurance.

### C.    TDCPA

Wells Fargo contends that threats by it to foreclose on the Property despite alleged inaccuracies in the amounts owed and its alleged failure to investigate properly Henderson's disputes as to the amounts owed and to correct alleged inaccuracies do not give rise to a cause of action under the TDCPA for wrongful debt collection practices.  Wells Fargo quotes section 392.301(b)(3) for the proposition that "merely 'threatening to exercise a statutory or contractual right of seizure,

repossession, or sale that does not require court proceedings' is not a violation of the [TDCPA]." Def.'s Mot. 19 (quoting Tex. Fin. Code Ann. § 392.301(b)(3)).   Wells Fargo asserts that this is especially true here because Henderson concedes that he failed to pay the requisite property taxes and the full monthly amounts owed under the Note.  Wells Fargo therefore contends that it was entitled under the Note and Deed to accelerate amounts owed and commence judicial foreclosure proceedings.  As a result, Wells Fargo contends that the threatened foreclosure of the Property alone is insufficient to support a TDCPA claim.

Regarding Henderson's allegation that Wells Fargo violated the TDCPA by communicating with his bankruptcy attorney about missed or inadequate payments, Wells Fargo maintains that such conduct does not violate section 392.301(a)(3)'s prohibition against "representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." Def.'s Mot. 19 (quoting Tex. Fin. Code Ann. § 392.301(a)(3)).  Wells Fargo asserts that the conduct alleged by Henderson is not the type of conduct that section 392.301(a)(3) is intended to prohibit; rather, according to Wells Fargo, "the purpose of Section 392.301(a)(3) is to 'offer[] some measure of protection to debtors against debt collectors' practice of contacting a debtor's employer as a coercive measure to collect a debt.'" Def.'s Mot. 19 (quoting Dorsaneo, Texas Litigation Guide § 242.03(5)(b)).  Wells Fargo further asserts that communicating with Henderson's attorney regarding the debt owed was proper because the attorney was acting as Henderson's agent with regard to the debt.

Henderson responds that Wells Fargo's threats to foreclose on the Property constitute a threat to take action prohibited by law in violation of the TDCPA.  Henderson further asserts that Wells

Fargo conduct in this regard also violated the TDCPA's prohibition against making fraudulent, deceptive, and misleading representations when collecting a debt. According to Henderson: "A fraudulent, deceptive, and misleading representation occurred when [Wells Fargo] threatened to foreclose upon [the Property] simply because it believed [he] had not made adequate payments." Pl.'s Resp. 11. Henderson also notes: "[Wells Fargo] failed to provide any documentation that [] showed what amount [he] owed above and beyond his regular mortgage payment" and miscalculated his mortgage payments. *Id.* Henderson therefore contends that Wells Fargo's attempt to foreclose on the Property violated the TDCPA and that he has stated a claim under the TDCPA.

The TDCPA generally prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt. *See* Tex. Fin. Code Ann. §§ 392.301, *et seq.* Henderson alleges in his Complaint that sections 392.201(a)(3), 392.303, and 392.304 were violated because Wells Fargo threatened numerous times to foreclose on the Property, despite inaccuracies in the amounts claimed to be owed; failed to investigate his numerous disputes regarding the amounts owed, including amounts owed for disputed escrow account charges and the way in which his payments were being applied to his account; and failed to correct inaccuracies after being provided with proof of the inaccuracies. Henderson alleges that Wells Fargo's conduct in this regard violated the TDCPA's prohibition against threatening to take action prohibited by law. Henderson also alleges that Wells Fargo's communications with his attorney regarding the debt violated section 392.201(a)(3).

Section 392.301(a) of the TDCPA prohibits a debt collector from using "threats, coercion, or attempts to coerce" in collecting a debt. Tex. Fin. Code Ann. § 392.301(a). Section 392.301(a)(3)

makes it unlawful for a debt collector to represent to a third party "that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute." *Id.* § 392.301(a)(3).  The court agrees with Wells Fargo that the prohibition in this regard as to communications with third parties does not apply to Henderson's attorney because an attorney acts as an agent for his client. *C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (citation omitted) ("The relationship between client and attorney . . . is a quintessential principal-agent relationship."); *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962) (Under Texas law, "[t]he attorney-client relationship is one of principal and agent.").  Moreover, Henderson relies on these same communications with his attorney in support of other claims.  Henderson cannot have it both ways.  The court therefore concludes that Henderson's TDCPA claim on this ground under Section 392.301(a)(3) fails as a matter of law, and Wells Fargo is entitled to dismissal of this claim.

Henderson's other grounds, except for his contention regarding the wrongful placement of insurance in September 2009 and Wells Fargo's alleged statements regarding the charges for such insurance and attempts to collect for such charges, similarly fail.  Section 392.301(a)(8) of the TDCPA prohibits a debt collector from "threatening to take an action prohibited by law." *Id.* § 392.301(a)(8).  Section 392.303(a)(2) of the TDCPA prohibits a debt collector from using 'unfair or unconscionable means" in collecting a debt, including "collecting or attempting to collect . . . a charge, fee, or expense incidental to the obligation unless the . . . incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." *Id.* § 392.303(a)(2).  Section 392.304 prohibits a debt collector from making a "fraudulent, deceptive, or misleading representation," including "misrepresenting the character, extent, or amount of a consumer debt." *Id.* § 392.304(a)(8).  For the reasons already discussed, the

court concludes that Wells Fargo was entitled to take the action that forms the basis of Henderson's TDCPA claim, except to the extent Henderson alleges that Wells Fargo made fraudulent or misleading statements regarding insurance charges owed and attempted to collect on such charges. Wells Fargo is therefore entitled to dismissal of Henderson's TDCPA claim, except to the extent that it pertains to allegedly misleading statements and improper attempts to collect fees or charges resulting from its refusal of Henderson's choice of insurance and placement of insurance on Henderson's escrow account in September 2009

### D.        Negligence

Wells Fargo contends that Henderson's negligence claim is barred by the economic loss doctrine and, even if the economic loss doctrine does not apply, Henderson's negligence claim fails because, as a matter of law, no special relationship exists under Texas law between a mortgagor and mortgagee to give rise to the existence of a duty.   Wells Fargo contends that, absent a special relationship, any duties it owed to Henderson are contractual and precluded by the economic loss doctrine.

 Based on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011), Henderson asserts that the Texas Supreme Court has not applied the economic loss doctrine as broadly as Wells Fargo contends and has not specifically addressed whether the economic loss doctrine is a per se bar to a negligence claim.   Henderson further asserts, with respect to his escrow account, that "Defendant undertook a function outside the contemplation of the Note and Deed, and in so doing owed [him] a duty to act with ordinary care."   Pl.'s Resp. 9.   The court disagrees.

Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Thus, tort damages are generally not recoverable if the defendants' conduct "would give rise to liability only because it breaches the parties' agreement." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Tort damages are recoverable, however, if the defendants' conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.* In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986), a negligent supervision case, the Texas Supreme Court explained: "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618; *DeLanney*, 809 S.W.2d at 494 ("When the only loss or damage is to the subject of the contract, the plaintiff's action is ordinarily on the contract.").

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.*, No. 3:05-CV-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *DeLanney*, 809 S.W.2d at 494-95. The Texas Supreme Court, however, has declined to extend the economic loss doctrine to a fraudulent inducement claim. *Sharyland Water Supply Corp.*, 354 at 417; *Formosa Plastics Corp.*, 960 S.W.2d at 46 (concluding that a party may recover tort damages for a fraudulent inducement claim

"irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract.").

In support of his negligence claim, Henderson alleges that Wells Fargo had a duty but failed to: (1) "correctly account for all items with respect to [his] loan and the escrow account"; (2) "investigate and correct any inaccuracies in [his] loan and escrow account that [he] reported to [Wells Fargo]"; and (3) "report back to Plaintiff when an investigation was initiated as to the status and conclusion of the investigation." Pl.'s Compl. 14. The court concludes that Henderson's negligence claim, based on the foregoing theories, is barred by the economic loss doctrine. Henderson does not allege any facts to support the existence of a special relationship between him and Wells Fargo or its predecessors. Moreover, even assuming as Henderson alleges that Wells Fargo did not accurately account for matters pertaining to his loan and the escrow account, Henderson's negligence claim fails because his only alleged injury is the economic loss to the subject matter of the contract at issue, that is, the Note and Deed. *DeLanney*, 809 S.W.2d at 494; *see also Williams v. Federal Nat'l Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986, at *4 (N.D. Tex. Feb. 13, 2012) (concluding that the plaintiffs' negligence claims, based on allegations that the defendants negligently performed their side of the agreement, negligently misrepresented the terms of the loan modification, and misrepresented to the plaintiffs that they would not foreclose on the property, arose out of alleged breaches of the loan modification or the defendants' negligence in their performance of the loan agreement, but, under Texas law, "the failure to perform the terms of a contract is a breach of contract, not a tort.") (quoting *Jim Walter Homes, Inc.*, 711 S.W.2d at 618).

**Memorandum Opinion and Order - Page 23**

Accordingly, Henderson's negligence claim is barred by the economic loss doctrine, and Defendants are entitled to dismissal of this claim.[4]

### E.       Fraud and Negligent Misrepresentation

Wells Fargo contends that Henderson's fraud and negligent misrepresentation claims are barred by the economic loss rule, and that Henderson does not and cannot plead these claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).  Wells Fargo further contends that Henderson cannot allege any facts establishing that he detrimentally and justifiably relied on any of the alleged statements because he acknowledges in his Complaint that he thought Wells Fargo's statements regarding his account were incorrect.  In addition, Wells Fargo contends that a reasonable person would not attach importance to or be induced by statements like "[Wells Fargo] values you as a customer."  Def.'s Mot. 16.

Henderson responds that his allegations regarding misrepresentations are sufficiently specific to satisfy Rule 9(b), that these claims are not barred by the economic loss rule, and that he has alleged facts regarding his reliance on Wells Fargo's representations.  Henderson contends that he relied on Wells Fargo's statements by making "several payments above that which he was obligated to pay under the Note and Deed of Trust."  Pl.'s Resp. 10.  Henderson asserts that his reliance was justified because "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question."  Pl.'s Resp. 10 (quoting *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011)).

---

[4] The court also notes that the second and third bases for Henderson's negligence claim are more properly evaluated in the context of RESPA.

**Memorandum Opinion and Order - Page 24**

To state a claim for fraudulent misrepresentation claim under Texas law, a plaintiff must allege that:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant (a) knew the representation was false, or (b) made the representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) plaintiff actually and justifiably relied on the representation; and (7) the representation caused the plaintiff injury.

*Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).  Under Texas law, the elements for negligent misrepresentation are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  Thus, to survive dismissal, Henderson must have pleaded facts from which the court can reasonably infer that he justifiably relied on Wells Fargo's alleged statements.

Henderson alleges in his Complaint that Wells Fargo made the following representations to him or his attorney:

> a.      In a letter dated 3/26/2009 from Wells Fargo that stated "we have not received a copy of your current hazard insurance policy."
>
> b.      In a letter dated 6/8/2009 that stated "Wachovia Mortgage values you as a customer."
>
> c.      In an "Annual Escrow Account disclosure Statement" dated 9/1/2009 which indicated that there was an escrow shortage in the amount of $4,481.75.
>
> d.      In a letter dated 9/4/2009 that stated "Wachovia Mortgage values you as a customer," and "we still have not received proof of current insurance coverage on your property," and "you will be charged only for the days that this policy was needed."

e.      In a letter dated 9/23/2009 that stated "Wachovia Mortgage values you as a customer," and "Wachovia Mortgage has advanced $6,597.65 to the taxing authority for the payment of the delinquent taxes."

f.      In a letter dated 10/6/2009 from Wells Fargo that stated "we appreciate your business and look forward to providing products and services that will meet all of your financial needs and goals."

g.      In an "Initial Escrow Account Disclosure Statement" dated 11/17/2009, that indicated that there was an escrow shortage in the amount of $14,920.28.

h.      In a letter dated 2/1/2010 that stated "the total amount due is $2,859.42."

i.      In a letter dated 3/18/2010 that stated "the loan secured by the property referenced above is delinquent," and "the loan is currently due for the 02/01/10 post petition payment."

j.      In a letter dated 4/27/2010 that stated "you are a valued customer."

k.      In a letter dated 5/27/2010 that stated "we have not received the last 3 mortgage payments," and "this loan is in default."

l.      In an "Annual Escrow Account Disclosure Statement" dated 5/27/2010 that indicated there was an escrow shortage in the amount of $7431.96.

m.      In a letter dated 6/25/2010 that stated "We appreciate your business and we're here to help. We'll keep you informed in advance of any changes to your mortgage."

n.      In a letter dated 6/28/2010 that stated "Wachovia appreciates the opportunity to address any concerns that you may have regarding the servicing of this loan."

o.      In a telephone conversation on 8/3/2010 where a Wells Fargo representative named "Melinda" told Mr. Henderson that the escrow shortage could be spread over 18 months.

p.      In a letter dated 8/5/2010 that stated "you are a valued customer."

q.      In a telephone conversation on 8/16/2010 where a Wells Fargo representative named "Lordis" told Mr. Henderson that the escrow account would be reduced by $4481.75 when the insurance was verified, the escrow shortage for property taxes could be spread over 18 months, and funds of $456 were in a suspense account.

r.      In a letter dated 9/1/2010 that stated "Since we currently do not maintain an escrow account on this loan for the payment of hazard insurance, we are unable to pay the premium."

s.      In a letter dated 9/13/2010 that stated "Wachovia Mortgage truly values your business and we work hard to provide the best possible service to our customers."

t.      In a letter from Wachovia Mortgage to Mr. Henderson's prior bankruptcy attorney, dated 11/1/2011, that stated "we may be able to create a more affordable mortgage payment for your client. We want to help your client keep their home," and "our goal is to work out a mortgage payment that your client can afford."

Pl.'s Compl. 15-17.  In addition, Henderson alleges that Wells Fargo misrepresented that he owed certain amounts for funds advanced through an escrow account, that he missed mortgage payments, and that he was behind in his mortgage payments.  Henderson further alleges that Wells Fargo made the foregoing representations so that he would continue to make payments under the Note, and that he relied on the representations in making "payments above the required contractual amount," and spending a large amount of time in bringing the inaccuracies to Wells Fargo's attention in an effort to correct the problem.  *Id.* 17.  In its reply, Wells Fargo contends that Henderson cannot rely on the statement in his responsive brief that he "made several payments above that which he was obligated to pay" because his Complaint contains no such allegations.  Def.'s Reply 10, n.3.

As noted above, Henderson does allege in his Complaint that he made "payments above the required contractual amount."  Pl.'s Compl. 17.  Henderson also alleges that after being notified in September 2009 that his monthly payment was going to increase from $1,228 to $1,630 because of escrow advances for property insurance, he "continued to make his original mortgage payment" even though he disputed the placement of insurance on his escrow account.  *Id.* 3, ¶ 11.  In addition, Henderson alleges that after being notified in November 2009 that his payment had increased from $1,602 to $2,859.42 as a result of unexplained escrow advances, he "continued to make his original

monthly payments, plus an extra amount each month" even though he believed there were "obvious errors in the escrow account." *Id.* 4, ¶ 13.

Henderson's allegations that he repeatedly disputed and did not believe Wells Fargo's statements regarding the amounts due under the Note seriously undermine his contention that he was induced by and justifiably relied on Wells Fargo's statements in continuing to make payments. Additionally, Henderson could not have been induced to continue making monthly payments in the original amount under the Note as a result of Wells Fargo's statements because he was already obligated under the Note and Deed to make such payments. Henderson was similarly obligated to pay for property insurance that was either selected by him or Wells Fargo.

Further, although Henderson alleges that he paid some unspecified amounts in addition to his original monthly mortgage payment, he does not allege that he paid the full amount that Wells Fargo allegedly represented as being owed or that Wells Fargo agreed to accept anything other than the full amount represented to be owed. Consequently, Henderson could not have relied, justifiably or otherwise, on Wells Fargo's alleged misrepresentations regarding amounts owed under the Note.

The court therefore concludes that Henderson's fraudulent and negligent misrepresentation claims fail as a matter of law, and Wells Fargo is entitled to dismissal of these claims. Having determined that Wells Fargo is entitled to dismissal of Henderson's fraudulent and negligent misrepresentation claims on this ground, the court need not address the parties' other contentions as to these claims.

F.     DTPA

Wells Fargo contends that Henderson's DTPA claim fails as matter of law because he does

not qualify as a consumer.  Henderson responds that he is a consumer for purposes of the DTPA

because he sought to purchase a home.  The court disagrees.

The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant

engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of

the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.

1995); Tex. Bus. & Com. Code § 17.50(a)(1). Whether a person qualifies as a consumer under the

DTPA is a question of law for the court to decide. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex.

App.   San Antonio 2002, pet. denied). A person who seeks only to borrow money is not a consumer

under the DTPA because lending of money, without more, does not involve a good or a service. *See*

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984). Likewise,

the servicing of an existing loan and the request to modify an existing loan do not involve a good or

service. *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011) (concluding

that when a plaintiff seeks a modification of an existing loan, such action is "analogous to

refinancing services" and does not qualify the plaintiff as a consumer under the DTPA); *Hansberger*

*v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996 (Tex. App.   San Antonio July 29,

2009, pet. denied) (citing *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 167 (Tex. App.   Austin

1996, no pet.) (finding loan servicing to be an ancillary service not contemplated by the DTPA);

*Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670, *3 (S.D. Tex. July 24,

2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the

lender provides services incidental to the loan that are not independent objectives of the transaction.").

Even construing Henderson's allegations in the light most favorable to him, the court concludes that he has not stated a claim upon which relief can be granted under the DTPA. Henderson's alleged DTPA claim arises out of either an existing home mortgage loan, Wells Fargo's servicing of the loan, or a requested loan modification. Moreover, the claim does not involve the purchase or lease of goods or services. Thus, he does not qualify as a consumer for purposes of the DTPA. Henderson's DTPA claim therefore fails as a matter of law, and Wells Fargo is entitled to dismissal of this claim.

### G.    FCA

Wells Fargo contends that Henderson lacks standing to assert an FCA claim. Alternatively, Wells Fargo contends that if Henderson has standing, he fails to allege that Wells Fargo made any false claim to the United States government for payment or approval. Wells Fargo further asserts that Henderson's allegation that Wells Fargo accepted "monetary incentives from the federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages" does not state a claim under the FCA. Def.'s Mot. 23. In his response to the motion to dismiss, Henderson does not address Wells Fargo's contentions regarding his FCA claim. Wells Fargo therefore contends, and the court agrees, that Henderson has abandoned his FCA claim. Def.'s Reply 11 (citing *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006), for the proposition that a claim is considered abandoned when the plaintiff fails to defend it in response to motion to dismiss). Accordingly, the FCA claim is no longer before the court. Even if Henderson did not abandon this claim, it fails as a matter of law.

The FCA imposes civil liability upon "[a]ny person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States.  31 U.S.C. § 3729(a). Either the United States government may initiate an FCA civil action against the alleged false claimant, 31 U.S.C. § 3730(a), or a private person may bring a "qui tam" civil action "for the person and for the United States Government" against the alleged false claimant.  31 U.S.C. § 3730(b)(1).  The FCA requires "qui tam" claimants to follow certain procedural requirements: (1) the action must be brought in the name of the United States; (2) the complaint must be filed in camera and under seal; (3) the plaintiff must serve a copy of the complaint and a written disclosure of all material evidence on the United States; and (4) the complaint shall not be served on the defendant until the court so orders.  31 U.S.C. § 3730.  To state a claim under the FCA, a plaintiff must allege: (1) the defendant presented or caused to be presented to the United States a claim for payment or approval; (2) the claim was false or fraudulent; (3) the defendant acted knowingly or with deliberate ignorance or in reckless disregard concerning the truth of the information contained in the claim presented; and (4) damages resulted.  *Arnold v. United States*, No. 98-30583, 1999 WL 301899, at *2 (5th Cir. May 6, 1999) (per curiam) (unpublished) (citing 31 U.S.C. § 3729(a)).

The court agrees with Wells Fargo that Henderson's allegations regarding Wells Fargo's alleged misuse of government stimulus funds and failure to provide him with loss mitigation options in the form of a loan modification fail to state a viable claim for relief under the FCA.  Moreover, Henderson has not complied with the strict requirements of section 3730 of the FCA. Accordingly, Wells Fargo is entitled to dismissal of this claim.

H.     RESPA

Wells Fargo contends that Henderson has not alleged sufficient facts to support a RESPA

claim:

> Plaintiff's claim for violation of RESPA fails because Plaintiff wholly fails to meet any of the three elements required for a RESPA claim. Plaintiff merely states in a conclusory manner that Wells Fargo violated RESPA by failing to respond to correspondence he purports to constitute QWRs, but fails to articulate any specific details regarding the alleged QWRs to support their qualification as QWRs under RESPA. *See Complaint*, ¶¶ 36, 93. Plaintiff fails to allege facts establishing to whom he sent the purported QWRs, where he sent them, the particular information he requested in the QWRs, and the nature and type of details provided by Plaintiff to Wells Fargo regarding the information he sought. *See id.* Furthermore, Plaintiff has not expressly pled that the loan servicer failed to respond to any QWRs in a timely manner. Rather, Plaintiff admits that Wells Fargo responded to his requests but claims, without explanation, that the responses were somehow deficient. Finally, Plaintiff fails to plead any specific facts that substantiate his conclusory allegations that he suffered any damages[] related to this claim[.] *Id.*, ¶ 94.

Def.'s Mot. 24-25.  In his response to the motion to dismiss, Henderson does not address Wells

Fargo's contentions regarding his RESPA claim.  Wells Fargo therefore contends, and the court

agrees, that Henderson has abandoned his RESPA claim.  Def.'s Reply 11 (citing *Black*, 461 F.3d

at 588 n.1).  Accordingly, the RESPA claim is no longer before the court. Even if Henderson did not

abandon this claim, it fails for the reasons that follow.

RESPA applies to loan servicing duties and requires "[e]ach servicer of any federally related

mortgage loan [to] notify the borrower in writing of any assignment, sale, or transfer of the servicing

of the loan to any other person." 12 U.S.C. § 2605(a).  RESPA requires a loan servicer to "provide

a written response acknowledging receipt of a "qualified written request" from a borrower relating

to the servicing of the borrower's loan within 20 days (excluding legal public holidays, Saturdays,

and Sundays) unless the action requested by the borrower is taken within such period. *Id.* §

2605(e)(1). "Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after

the receipt from any borrower of any qualified written request," the loan servicer must make

necessary corrections to the borrowers account, provide a written explanation as to why the loan

servicer believes that the borrower's account is correct, or explain why the information requested

is unavailable or cannot be obtained by the loan servicer.  *Id*. § 2605(e)(2).

In July of 2010, RESPA was amended by Congress to reduce the time period under section

2605(e)(1)(A) from twenty days to five days, and the time period under section 2605(e)(2) from sixty

days to thirty days.  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-

203, § 1463(c), 124 Stat. 1376, 2183-84 (2010) ("Dodd-Frank").  The Dodd-Frank amendments,

however, are not effective until January 10, 2014.  *See Berneike v. CitiMortgage, Inc*., 708 F.3d

1141, 1145 n.3 (10th Cir. 2013).   As a result, they do not apply to Henderson's RESPA claim based

on his alleged QWRs under RESPA in 2010.

RESPA defines "qualified written request" as "a written correspondence" that "(i) includes,

or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes

a statement of the reasons for the belief of the borrower, to the extent applicable, that the account

is in error or provides sufficient detail to the servicer regarding other information sought by the

borrower."  12 U.S.C. § 2605(e)(1)(B).  A loan servicer that fails to comply with section 2605 is

liable to an individual borrower for "any actual damages to the borrower as a result of the failure,"

and additional damages "in the case of a pattern or practice of noncompliance."  *Id*. § 2605(f)(1).

Thus, "to state a claim for a RESPA violation in connection with a [QWR], a plaintiff must allege

actual damages resulting from a violation of § 2605." *Enis v. Bank of Am., N.A.,* No.

3:12-CV-0295-D, 2013 WL 840696, at *3 (N.D. Tex. Mar. 7, 2013) (quoting *Renfrow v. CTX Mortg.

Co.*, No. 3:11-CV-3132-L, 2012 WL 3582752, at *7 (N.D. Tex. Aug. 20, 2012); *see also Collier v.*

*Wells Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 WL 1464170, at *3 (N.D. Tex. May 26, 2006)

(same).  In addition to actual damages and statutory damages in cases involving a pattern or practice

of noncompliance, a borrower, if successful on his section 2605 claim, may also recover "the costs

of the action, together with any attorneys fees incurred in connection with such action as the court

may determine to be reasonable under the circumstances."  *Id.* § 2605(f)(3).

Henderson alleges as follows in support of his RESPA claim:

36.    Mr. Henderson started sending Qualified Written Requests, pursuant to the Real
       Estate Settlement Procedures Act ("RESPA"). RESPA Letters were sent on June 8th,
       July 12th, August 4th, August 28th, September 12th and again in October. Although
       Mr. Henderson occasionally received a generic response saying "more research is
       needed", he never actually got any answers that he requested.

                                          . . . .

93.    Mr. Henderson alleges that Defendant's loan servicers as that term is defined and in
       this matter have violated terms of the Real Estate Settlement Procedures Act
       ("RESPA"), 12 U.S.C. § 2605 with regard to the servicing of Mr. Henderson's
       mortgage loan including:

       a.      failing to properly and timely respond to qualified written requests mailed to
               Defendant on June 8th, July 12th, August 4th, August 28th, September 12th
               and again in October of 2010.

94.    As alleged previously, Mr. Henderson never received a proper response to his
       Qualified Written Requests. He only received generic response letters telling him that
       more research was needed. Once, he was sent a copy of his Note and Deed of trust.
       Once, he was sent an inaccurate reporting of the loan history and the escrow account.
       He was never provided any documentation he requested or any explanation for the
       discrepancies in the accounting of his mortgage payments.

95.    Because Defendant failed to properly respond to Mr. Henderson's Qualified Written
       Requests, Defendant has violated the Real Estate Settlement Procedures Act.

96.    Mr. Henderson has suffered economic and non economic damages as a result of
       Defendant's RESPA violations. Specifically, Mr. Henderson has suffered mental
       distress. Mr. Henderson has had to incur attorney's fees to enforce his legal rights.
       Mr. Henderson has had damage to his credit and to his reputation. Mr. Henderson's

property values may have decreased. Mr. Henderson has lost intrinsic value to his home.

Pl.'s Compl. 10, 28-29.

Based on the foregoing, it appears that Henderson does not take issue with the timing of Wells Fargo's response to his request for information.  He instead contends that Wells Fargo's response was inadequate.  The court, however, cannot determine from Henderson's conclusory allegations whether the letters he sent "on June 8th, July 12th, August 4th, August 28th, September 12th and again in October of 2010" qualify as actionable QWRs under RESPA because he does not state what information was requested or to whom the requests for information were sent.

Even assuming that the letters qualify as QWRs, the damages alleged by Henderson are not actionable under RESPA.  Henderson alleges in conclusory fashion that he "suffered economic and non economic damages as a result of Defendant's RESPA violations"; however, he does not allege that the damages he sustained in the form of attorney's fees, mental anguish, damage to his credit and reputation, potential decreases in value of the Property, and the loss of "intrinsic value to his home" resulted from Wells Fargo's alleged failure to provide him with the information he requested pursuant to RESPA.

Moreover, the court cannot reasonably infer from Henderson's pleadings that Wells Fargo's alleged failure to provide him with information he requested caused his alleged damages.  Henderson filed for bankruptcy seven months before he sent the first letter in June 2010.  Henderson also acknowledges that Wells Fargo provided him with notice of its intent to foreclose on the Property on May 27, 2010, before he sent the first of several letters.  Thus, any damages that Henderson sustained to his credit or the value of the Property occurred before he sent the first letter to Wells

Fargo in June 2010.  Further, the court has previously held that damages in the form of attorney's fees and mental anguish are insufficient to meet the requirement that the plaintiff must have suffered actual damages as a result of the defendant's RESPA violations.  *Steele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *7-8 (N.D. Tex. June 25, 2013).

Accordingly, the court concludes that Henderson has failed to state a claim upon which relief can be granted under RESPA.  Although Henderson's response to the motion to dismiss includes a global request to amend his pleadings, he failed to provide any explanation as to how he would remedy the deficiencies noted in the motion to dismiss as to his RESPA claim if granted leave to amend, and as noted, he did not respond to Wells Fargo's contentions regarding his RESPA claim. The court will therefore not permit Henderson to amend his pleadings as to this claim.

## I.    Accounting

Wells Fargo contends that Henderson's request for accounting should be denied because his underlying claims fail and the facts and accounts at issue are not so complex to warrant the equitable remedy of an accounting under Texas law.  Henderson did not address Wells Fargo's contentions regarding his request for an accounting. Wells Fargo therefore contends that Henderson has abandoned his request for an accounting.  Def.'s Reply 11 (citing *Black*, 461 F.3d at 588 n.1). Because Henderson has claims that survive the motion to dismiss, denial of his request for an accounting is premature.  Accordingly, the court will deny Wells Fargo's motion to dismiss Henderson's request for an accounting.

## IV.    Amendment of Pleadings

To the extent that the court determines that his pleadings do not state claims upon which relief can be granted, Henderson requests that he be allowed to amend his pleadings. Rule 15(a)(2)

**Memorandum Opinion and Order - Page 36**

of the Federal Rules of Civil Procedure states "[t]he court should freely give leave when justice so requires." The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller* v. *Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Henderson previously amended his pleadings one time; however, he did not have the benefit of Wells Fargo's motion to dismiss or this memorandum order and opinion. The court nevertheless determines that Henderson should not be permitted to further amend his pleadings as to the dismissed claims because the claims were either abandoned or fail as a matter of law, and further attempts to amend would therefore be futile.  Accordingly, the court will not allow Henderson an opportunity to further amend his pleadings with regard to the dismissed claims.  For the reasons discussed, however, the court will permit Henderson to file an amended complaint that addresses the deficiencies herein noted regarding his remaining contract claim, that is, his failure to plead that he performed under the parties' contract by obtaining insurance that complied with and satisfied the requirements for insurance set forth in paragraph 5 of the Deed.

## V.      Conclusion

For the reasons herein stated, Henderson has failed to state claims upon which relief can be granted, and all of the claims asserted, except for his contract and wrongful debt collection claims, either fail as a matter of law or were abandoned.  The court therefore **vacates** the order of reference (Doc. 29), **grants in part and denies in part** Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17), and **dismisses with prejudice** all of Henderson's claims, except his contract and wrongful debt collection claims that pertain to the allegedly improper placement of insurance on his escrow account and related charges for such insurance before Plaintiff filed for bankruptcy in September 2009.  The court also **denies** Wells Fargo's motion to dismiss Henderson's request for an accounting as premature.

Plaintiff is **directed** to file an amended complaint by **October 15, 2013**, that addresses the deficiencies herein noted regarding his remaining contract claim, that is, his failure to plead that he performed under the parties' contract by obtaining insurance that complied with and satisfied the requirements for insurance set forth in paragraph 5 of the Deed.  *Failure to file an amended complaint as directed will result in dismissal, either without prejudice under Rule 41(b) or with prejudice under Rule 12(b)(6), of Plaintiff's remaining contract claim based on the alleged unreasonable refusal of his choice of insurance.  Further, any amended complaint filed by Plaintiff must not include any claims dismissed in this memorandum opinion and order.*

**It is so ordered** this 30th day of September, 2013.

Sam A. Lindsay
United States District Judge