IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES R. HENDERSON**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-3935-L** |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Dismiss Second Amended Complaint (Doc. 47), filed November 26, 2013.  After carefully considering the motion, briefing, amended pleadings, and applicable law, the court **denies** the Motion to Dismiss Second Amended Complaint (Doc. 47).

### I.      Procedural and Factual Background

This is a mortgage foreclosure case that was originally brought by Plaintiff James R. Henderson ("Henderson" or "Plaintiff") on September 27, 2012, in the 14th Judicial District Court, Dallas County, Texas, against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant").[1] The allegations pertaining to Henderson's claims and the events that gave rise to this action are set forth in the court's September 30, 2013 opinion, in which the court granted Wells Fargo's first motion to dismiss with respect to all of Henderson's claims, except those for breach of contract and wrongful debt collection practices based on Wells Fargo's force-placement of insurance and its establishment of an escrow account on or before September 2009 to collect amounts it paid for

---

[1] The court's reference herein to "Wells Fargo" or "Defendant" includes Wells Fargo's predecessors in interest, World Savings Bank, FSB and Wachovia Mortgage, FSB.

**Memorandum Opinion and Order - Page 1**

insurance and related charges.  The court also denied Wells Fargo's motion to dismiss Henderson's request for an accounting as premature.

In denying Wells Fargo's motion to dismiss all of Henderson's state law claims based on preemption grounds under the Home Owners' Loan Act ("HOLA"), the court concluded "that HOLA preemption does not apply to Henderson's state claims against Wells Fargo, and dismissal on this ground is improper."  Mem. Op. and Order 9-10 (Doc. 37).  Resolution of this issue turned on whether Wells Fargo was entitled to HOLA protection as the successor-in-interest to a federal savings bank.  Regarding this issue, the court noted: "Even if the court determined that HOLA applied to this case, it is not convinced that dismissal of Henderson's contract and tort claims under HOLA is proper because such claims are generally exempted from preemption under HOLA. 12 C.F.R. § 560.2(c)."  *Id.* at 10.  The court did not discuss in detail whether Henderson's specific state law claims were preempted or exempted from preemption under HOLA because briefing on this issue was de minimis.[2]

On October 15, 2013, Henderson filed his Second Amended Complaint as directed by the court.  On November 7, 2013, Wells Fargo moved for reconsideration of the court's September 30, 3013.  Alternatively, Wells Fargo requested certification to appeal the issue of whether the Home Owners' Loan Act ("HOLA") applies and preempts Henderson's remaining claims for breach of contract and violations of the Texas Debt Collection Practices Act ("TDCPA").  On November 26, 2013, Wells Fargo filed a second motion to dismiss Plaintiff's remaining state law claims as alleged

---

[2] Only two paragraphs of Wells Fargo's twenty-five page motion to dismiss was devoted to this specific issue. Plaintiff's response did not address the issue of whether any of his state law claims was preempted or exempted from preemption if the court determined that HOLA applied.  Plaintiff instead focused on whether Wells Fargo was entitled to HOLA protection as the successor-in-interest to a federal savings bank.

in the Second Amended Complaint.  Because the arguments in Wells Fargo's motion to dismiss were

essentially the same as those in its motion for reconsideration, the court denied as moot the motion

for reconsideration.  After briefing on the second motion to dismiss was complete, Wells Fargo filed

a Notice of New Authority on May 2, 2014, to notify the court of a recent decision by a federal court

in California regarding the application of HOLA.  For the reasons herein explained, the court need

not revisit the issue of whether Wells Fargo is entitled, as the successor-in-interest to a federal

savings bank, to protection under HOLA because it determines that, even if HOLA applies,

Plaintiff's remaining state law claims are not preempted, or they are exempt from preemption.

## II.      Rule 12(b)(6) Standard - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal citations omitted).  While a complaint need not contain detailed factual allegations, it must

set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a

complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks,

citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

## III.    Analysis

Wells Fargo's motion to dismiss essentially presents two issues: (1) whether it is entitled to HOLA protection as the successor-in-interest to a federal savings bank; and (2) whether Plaintiff's remaining state law claims are preempted by HOLA. With respect to the first issue, Wells Fargo contends that it is entitled to the protections of HOLA because Henderson's Note was originated by World Savings Bank, a federal savings bank, and Wells Fargo is the successor-in-interest to World Savings Bank.  According to Wells Fargo, World Savings Bank changed its name to Wachovia Mortgage, FSB in December 2007, and Wachovia Mortgage, FSB merged with Wells Fargo in November 2009.  Wells Fargo again requests the court to take judicial notice of these facts. Henderson counters that HOLA does not apply, and even if it does, HOLA does not preempt his contract and TDCPA claims.

While this issue was briefed more thoroughly by the parties the second time around, the court determines that, even assuming that Wells Fargo is entitled to protection under HOLA as World Savings Bank's successor-in-interest, Henderson's remaining claims are not preempted under HOLA.  Consequently, the court need not address the broader issue of whether Wells Fargo is entitled to protection under HOLA as World Savings Bank's successor-in-interest and instead focuses only on Wells Fargo's contention that Henderson's remaining state claims are preempted under HOLA.

A.      The Home Owners' Loan Act

HOLA regulates the lending practices of federal savings banks and authorizes the Office of Thrift Supervision ("OTS") to:

> promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices . . . OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a).  Section 560.2 of the Code of Federal Regulations includes a list of "illustrative examples" of the types of state laws that are preempted by HOLA, such as "state laws purporting to impose requirements regarding":

(1) Licensing, registration, filings, or reports by creditors;

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings . . . ; and

(13) Due-on-sale clauses.

12 C.F.R. § 560.2(b).  Section 560.2 also identifies state claims that are not preempted by HOLA,

including contract and commercial law, real property law, and tort law, to the extent that such laws

"only incidentally affect the lending operations of Federal savings associations" or are otherwise

consistent with or are not contrary to the purposes expressed in section 560.2(a).  12 C.F.R. §

560.2(c).  Thus, HOLA does not completely preempt all state laws that might have some effect on federal savings banks.

## B.    The Parties' Contentions

Wells Fargo contends that Henderson's claims are preempted under section 560.2(b) and do not fall within the narrow confines of protection afforded under section 560.2(c).  Relying on *Silvas v. E\*Trade Mortgage Corporation*, 514 F.3d 1001 (9th Cir. 2008), Wells Fargo contends that Henderson's remaining claims for breach of contract and violations of the TDCPA "fall squarely within the loan activities listed in § 560.2(b)" and are therefore expressly preempted because "they seek to impose requirements regarding: the ability of a creditor to require or obtain insurance (12 C.F.R. § 560.2(b)(2)); terms of credit, including adjustments to the balance or payments due (*id.* § 560.2(b)(4)); loan-related fees (*id.* § 560.2(b)(5)); escrow accounts (*id.* § 560.2(b)(6)); and the servicing of mortgages (*id.* § 560.2(b)(10))."  Def.'s Mot. 17.  Alternatively, Wells Fargo contends that Henderson's claims are presumptively preempted because they affect lending with respect to a lender's ability to protect collateral securing a loan through the placement of insurance and an escrow account to collect payments made by the lender for insurance:

> The allegations underlying Plaintiff's claims relate to an issue of paramount importance to lending, *i.e.* whether the collateral securing a loan is adequately protected by insurance coverage. Lender-placed insurance coverage ensures that the property securing a loan remains protected against damage or financial loss thereby safeguarding the interests of the lender and the homeowner alike. Plaintiff's claims also relate to a lender's authority to impose an escrow account, which is a commonly-used vehicle for collecting payments made by a lender to safeguard its interest in the collateral. Thus, the allegations underlying Plaintiff's claims cut to the core of lending.

Def.'s Mot. 18. Wells Fargo similarly contends that Henderson's claims are not exempted from preemption under section 560.2(c) because they significantly affect federal lending practices by: (1)

interfering with its "unfettered discretion" under the Deed of Trust to protect the collateral securing

Henderson's loan; and (2) subjecting it to duties or contractual requirements that are not included

in the Deed of Trust.  *Id.* at 21.

Wells Fargo asserts that Henderson's claims are based on his contention that it was obligated

to accept his choice of insurance policy.  Wells Fargo contends that there is no requirement in the

Deed of Trust that it must accept any form of insurance selected by Henderson, and that Henderson's

claims therefore seek to impose obligations on a federal savings bank that are outside what is called

for by the Deed of Trust.  According to Wells Fargo, paragraph five of the Deed of Trust gives it

"unfettered discretion" to determine whether the insurance policy selected by a borrower is

acceptable:

> Paragraph 5 of the Deed of Trust makes clear that Lender possesses unfettered
> discretion to determine whether the **insurance *policy*** is acceptable. The only
> limitation on Lender under paragraph 5 is that if it deems the **insurance *policy*** is
> acceptable, it cannot refuse to accept the **insurance *company*** Plaintiff selects, unless
> that refusal is reasonable. Nonetheless, in this case, Plaintiff contends not that
> Wachovia unreasonably refused his choice of **insurance *company***, but that
> Wachovia unreasonably refused his choice of **insurance *policy***.  *See* Complaint at
> ¶¶ 27-28. Plaintiff fails to appreciate that the Deed of Trust sets no limit on Lender's
> discretion to dictate the **insurance *policy***, and that the limited reasonableness
> standard only applies to Wachovia's acceptance of the **insurance *company*** Plaintiff
> selects.

*Id.* (emphasis in original).  Wells Fargo maintains that because it "had the unfettered right to select

any **insurance *policy*** it so chose" and established an escrow account to collect payment of property

insurance premiums advanced by it after written demand in accordance with the Deed of Trust,

Henderson had no right to select an insurance carrier or coverage or make insurance related decisions

under paragraph five of the Deed of Trust.  For the same reason, Wells Fargo contends that it had

no duty to accept any form of insurance Henderson selected once it elected to impose an escrow account under paragraph 2(B) of the Deed or Trust.  *Id.* at 22.

Wells Fargo contends that because its actions were consistent with the Deed of Trust, Henderson's claims "would go beyond the specific terms of the Deed of Trust and impose extra-contractual requirements on [its] ability to require or obtain property insurance (12 C.F.R. § 560.2(b)(2)), its assessment of loan-related fees (*id.* § 560.2(b)(5)), and its imposition of an escrow account (*id*. § 560.2(b)(6))."  *Id.*  Wells Fargo therefore maintains, based on authority from other jurisdictions, that "[b]ecause Plaintiff attempts to impose extra-contractual requirements on Wells Fargo, Plaintiff seeks an application of state law that would more than incidentally affect federal lending practices, and thus, Plaintiff's purported breach of contract claim is preempted by HOLA."[3] *Id.*  Finally, Wells Fargo contends that if Henderson's claims turn on whether it abused its discretion afforded by the Deed of Trust, the claims are preempted because:

> If the Court determines that the ultimate issue is whether Wachovia reasonably refused Plaintiff's selection of insurance coverage, such conclusion would substantially affect lending.  *See* Doc. No. 37. at p. 17.  Specifically, asking borrowers and jurors to assess an FSB's determination regarding what constitutes adequate insurance to protect the collateral securing its loan would substantially impact lending.

*Id.* at 23.

Henderson responds that HOLA only preempts state laws that interfere with or conflict with federal regulation, and that neither of his claims based on contract and consumer protection laws imposes or interferes with federal regulation of federally chartered banks.  With respect to his

---

[3] Although Wells Fargo refers here to Plaintiff's contract claim, its analysis is based on the assumption that Plaintiff's TDCPA claim is essentially "derivative" of his breach of contract claim. Def.'s Mot. 19, 20 n.15.  Wells Fargo's analysis under section 560.2(c) therefore focuses on Plaintiff's contract claim.

contract claim, Henderson asserts that he simply seeks to enforce the contract and security instrument entered into between him and World Savings Bank as written. Henderson contends that his TDCPA claim is similarly based in part on the inaccurate and disputed amounts allegedly owed on his account and has nothing to do with federal lending practices. In addition, Henderson maintains that his allegations that Defendant made false representations and demands regarding the amounts allegedly owed on his account relate to legal duties applicable to all businesses, not just those regulated by HOLA. For support that such claims are not preempted by HOLA, Henderson relies on a handful of cases from other jurisdictions.[4]

## C.    Application of HOLA to Plaintiff's State Law Claims

The court agrees with Wells Fargo's assertion that the allegations supporting Henderson's claims, rather than the abstract nature of those claims, should be examined in determining the effect, if any, on lending operations of maintaining such claims. The application of HOLA preemption advocated by Wells Fargo in this case, however, is overly broad. The court has examined the Second Amended Complaint and determines that Henderson's state law claims are not preempted because they at most "only incidentally affect the lending operations of Federal savings associations." 12 C.F.R. § 560.2(c).

Henderson's remaining state law claims are for breach of contract and TDCPA violations under sections 392.303 and 392.304 of the Texas Finance Code. Section 392.303 of the Texas Finance Code prohibits a debt collector from collecting or attempting to collect interest or charges

---

[4] *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75 (D. Mass. 2012); *McAnaney v. Astoria Fin. Corp.,* 665 F. Supp. 2d 132 (E.D.N.Y. 2009); *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073 (C.D. Cal. 2009); *Reyes v. Downey Savings and Loan Ass'n, F.A.*, 541 F. Supp. 2d 1108 (C.D. Cal. 2008); *Konynenbelt v. Flagstar Bank*, 617 N.W.2d 706 (Mich. Ct. App. 2000).

not authorized by the Note, Deed of Trust, or applicable law.  Tex. Fin. Code Ann. § 392.303(a)(2).

Section 392.304 of the Texas Finance Code prohibits debt collectors from using fraudulent, deceptive, or misleading representations in collecting a debt.  *Id.* § 392.304.

The essence of all of Henderson's claims is that Wells Fargo violated the Deed of Trust by force-placing property insurance and establishing an escrow account to collect funds advanced by it for property insurance and related charges that increased the amount of Henderson's monthly payment and caused him to default under Note and Deed of Trust.  Henderson appears to contend that, because he purchased property insurance and made monthly mortgage payments in accordance with the Note and Deed of Trust, there was no need for Wells Fargo to force-place insurance on the property that secured his loan on or before September 2009, and Wells Fargo was not authorized under the Deed of Trust to take such action under the circumstances.  Henderson in effect contends that Wells Fargo breached the Deed of Trust as a result of the foregoing actions, whereas Wells Fargo contends that Henderson acknowledges that he breached the Deed of Trust in 2010 by failing to make the increased monthly payments that included escrowed charges for insurance.[5]

Henderson also contends that, as a result of Wells Fargo's improper purchase and force-placement of insurance: (1) his account was wrongfully assessed fees or charges that Wells Fargo was not entitled to assess or collect under the Deed of Trust; and (2) his payments were applied in a manner not authorized by the Deed of Trust, that is, they were applied first to escrowed amounts to cover the insurance purchased by Wells Fargo instead of principal and interest due under the Note.  In addition, Henderson contends that Wells Fargo violated the TDCPA by making

---

[5] Henderson's original monthly mortgage payment under the Note was $1,228.  Henderson's monthly payment increased to $1,630 after Wells Fargo force-placed insurance on the property.

misrepresentations regarding the amounts owed under the Note and Deed or Trust when it attempted

to collect on the debt and foreclose on his property.

When HOLA was enacted, the OTS explained as follows regarding the preemption analysis

for state laws:

> When analyzing the status of state laws under § 560.2, the first step will be to
> determine whether the type of law in question is listed [among the illustrative
> examples of preempted state laws] in paragraph (b). If so, the analysis will end there;
> the law is preempted. If the law is not covered by paragraph (b), the next question is
> whether the law affects lending. If it does, then, in accordance with paragraph (a), the
> presumption arises that the law is preempted. This presumption can be reversed only
> if the law can clearly be shown to fit within the confines of [the types of state laws
> not preempted, as described in] paragraph (c). For these purposes, paragraph (c) is
> intended to be interpreted narrowly. Any doubt should be resolved in favor of
> preemption.

OTS Final Rule on Lending and Investment, 61 Fed. Reg. 50951-01, at *50966-67, 1996 WL 548771

(Sept. 30, 1996).  The OTS also made "clear that it does not intend to preempt basic state laws such

as state uniform commercial codes and state laws governing real property, contracts, torts, and

crimes." *Id*.  at *50966-67.

In an opinion letter issued approximately three months later, the OTS elaborated on the

preemption analysis under HOLA when asked to examine two Indiana laws. *See* OTS Opin. Letter

P-96-14, 1996 WL 767462 (Dec. 24, 1996).  With respect to a commercial law that required lenders

to make certain disclosures, the OTS concluded that, because section 560.2(b)(9) preempts state laws

imposing lending disclosures and the Indiana law at issue required specific lending disclosures, it

was preempted. *Id.* § II(B).  In contrast, the OTS concluded that Indiana's deceptive acts and

practices statute ("DAP") was not preempted.  The OTS found that because "[s]tate laws prohibiting

deceptive acts and practices in the course of commerce are not included in the illustrative list of

preempted laws," such statutes are not subject to a preemption challenge on their face and require

further analysis. *Id.* § II(C). Because the DAP "affecte[d] lending to the extent that it prohibit[ed]

misleading statements and practices in loan transactions," the OTS reasoned that a presumption arose

"that the DAP statute would be preempted in connection with loans made by the Association." *Id.*

The OTS, however, noted that it did not intend to preempt state laws "that establish the basic norms

that undergird commercial transactions," such as the categories of state laws identified in section

560.2(c), if they "only incidentally affect[] the lending operations of federal savings associations, or

[are] otherwise consistent with the objectives" in section 560.2(a). *Id.* The OTS ultimately

concluded that the DAP fell "within the category of traditional 'contract and commercial' law[s]

under § 560.2(c)(1)" and was not preempted because:

> [w]hile the DAP may affect lending relationships, the impact on lending appears to
> be only incidental to the primary purpose of the statute—the regulation of the ethical
> practices of all businesses engaged in commerce in Indiana. There is no indication
> that the law is aimed at any state objective in conflict with the safe and sound
> regulation of federal savings associations, the best practices of thrift institutions in
> the United States, or any other federal objective identified in § 560.2(a). *In fact,*
> *because federal thrifts are presumed to interact with their borrowers in a truthful*
> *manner[,] Indiana's general prohibition on deception should have no measurable*
> *impact on their lending operations.*

*Id.* (emphasis added).

Like Indiana's DAP, Henderson's breach of contract claim and claim for violations of the

TDCPA under section 392.303 and 392.304 of the Texas Finance Code are not included in the

illustrative list of preempted laws in section 560.2(b). They instead are within the category of

traditional "contract and commercial" law under section 560.2(c)(1). Section 392.304 prohibits debt

collectors from collecting or attempting to collect interest or charges not authorized by a note, deed

**Memorandum Opinion and Order - Page 14**

of trust, or applicable law and is therefore similar to Indiana's DAP to the extent it generally prohibits deception in all transactions involving debt collection.  Further, Henderson's breach of contract claim and claim under section 392.303 of the Texas Finance Code simply seek to enforce the contract (Deed of Trust) voluntarily entered into between Henderson and Wells Fargo and the contractual duties included in that contract.  Thus, even though Henderson's contract and TDCPA claims relate to or touch on lending activities in section 560.2(b) such as loan servicing, insurance, and escrow accounts, the state laws that form the bases of the claims do not "purport[ ] to impose requirements" on or regulate the lending operations of federal savings associations, and there is no indication that they conflict with any federal objective identified in section 560.2(a).  The court therefore determines that they "only incidentally affect the lending operations of Federal savings associations" and are exempted from preemption under section 560.2(c).

The court also disagrees with Wells Fargo's contention that Henderson's claims with respect to alleged violations of the Deed of Trust impose additional requirements on Wells Fargo that are not included in the Deed of Trust.  Notably, in its first motion to dismiss, Wells Fargo's preemption analysis focused on its contention that Henderson's claims were expressly preempted under section 560.2(b). Wells Fargo also contended that it was entitled under the Deed of Trust to "do[] and pay[] for whatever it deems reasonable and appropriate to protect [its] rights in the Property if Plaintiff failed to meet his obligations under the Deed of Trust or began a legal proceeding in bankruptcy." Def.'s Mot. to Dismiss 11 (Doc. 17) (internal quotation marks omitted).  Wells Fargo maintained that, while Henderson alleged that it improperly placed insurance on the property on or around September 1, 2009, he failed to allege any facts to show that the insurance he purchased complied with the Deed of Trust's requirements applicable to insurance.  In other words, Wells Fargo

**Memorandum Opinion and Order - Page 15**

contended that Henderson had not sufficiently alleged facts that, if proved, would show that he was not in default under the Deed of Trust.  The court agreed and allowed Henderson to amend his pleadings to allege facts regarding his purchase of insurance and whether such purchase was done in accordance with the Deed of Trust.  Henderson amended his pleadings accordingly on October 15, 2013.

Wells Fargo now appears to contend in its second motion to dismiss that, regardless of whether the Henderson purchased insurance that satisfied the requirements in the Deed of Trust, it had the "unfettered discretion" under the Deed of Trust to reject his choice of insurance, force-place insurance, and escrow amounts paid for the insurance to protect its interest in the property.  For support, Wells Fargo relies on the insurance and escrow provisions in paragraphs two and five of the Deed of Trust.  If the court were to look only at these provisions, it might agree with Wells Fargo's interpretation.  Wells Fargo's interpretation of the Deed of Trust, however, fails to account for paragraph seven, which limits the circumstances under which a lender can exercise its discretion in protecting its interests in the property. *See Transitional Learning Comty. at Galveston, Inc. v. United States Office of Personnel Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none [is] deemed superfluous.").[6]  Specifically, as acknowledged

---

[6] The Deed or Trust contains a governing law provision that provides for the application of federal law: "This Security Instrument and the Note shall be governed by and construed under federal law, rules and regulations, including those for federally chartered savings institutions . . . and, to the extent federal law does not apply, by the law of the jurisdiction in which the Property is located [Texas]." Def.'s App. 14.  The Note also contains an "Applicable Law" that provides:

> This Note shall be governed by the law of Texas except to the extent federal law applies. However, in the event of any conflict between (i) any provision of Texas law that must apply in order to make this Note enforceable in accordance with its terms and (ii) any other applicable law, such provision of Texas law shall apply.

**Memorandum Opinion and Order - Page 16**

by Wells Fargo in its prior motion to dismiss, paragraph seven makes clear that the lender's right under the Deed of Trust to purchase insurance required under paragraph five or take other actions that it "deems appropriate and reasonable" to protect its rights in the property only arises *if* (1) the borrower fails to comply with the Deed of Trust or (2) someone initiates legal proceedings, such as bankruptcy or other legal proceedings, that "significantly affect" the property. Def.'s App. 12. Thus, contrary to Wells Fargo's assertion, its discretion under the Deed of Trust to take action in protecting its rights in the property is not unfettered.

Moreover, it is not apparent from the pleadings in this case that either of the two events specified in paragraph seven occurred that would have given rise to Wells Fargo's right to exercise its discretion in 2009 to take action to protect its interest in the property. In the Second Amended Complaint, Henderson alleges that, before Wells Fargo force-placed insurance on the property and escrowed amounts for such insurance, he had complied with the Deed of Trust by making required monthly payments and purchasing insurance. Henderson also alleges that he did not file for bankruptcy until *after* Wells Fargo force-placed insurance on the property and escrowed the amounts it paid for insurance.

---

Def.'s App. 5. Other than Wells Fargo's argument that it is entitled to protection under HOLA as the successor-in-interest to a federal savings bank because the Deed of Trust calls for the application of federal law, the issue of what law governs this dispute is not addressed by the parties; nor do the parties address whether paragraph five of the Deed or Trust is ambiguous. The court's discussion of the issue will therefore be similarly limited because resolution of the issue is not necessary to decide Wells Fargo's motion. Despite what appears to be conflicting language in the two governing law provisions, the court concludes that federal common law applies to any interpretation of the Deed of Trust, and Texas state law applies to Plaintiff's remaining causes of action. *See Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat'l Ass'n*, ___F.3d___, 2014 WL 1633508, at *2 (5th Cir. Apr. 24, 2014); *see also Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 821 (5th Cir. 2003) (holding that federal law controls the interpretation of contracts between private parties if there is sufficient federal interest). Even if the court were to apply Texas law in interpreting the Deed of Trust, the result would likely be the same because "federal common law of contracts . . . draws on . . . the core principles of the common law of contracts that are in force in most states." *Excel Willowbrook, L.L.C.*, 2014 WL 1633508, at *3 (internal footnote and quotation marks omitted).

**Memorandum Opinion and Order - Page 17**

The court previously concluded that Wells Fargo was entitled to establish an escrow account or take other actions to protect its rights in the property *after* Henderson filed for bankruptcy the first time in November 2009. The court, however, may need to revisit this issue because, in reviewing Henderson's previous and current pleadings, it is not apparent whether he sought to discharge his debt under the Note and Deed or Trust in the November 2009 bankruptcy. If he did not, the November 2009 bankruptcy proceeding may not have "significantly affect[ed]" the property and given rise to Wells Fargo's right under paragraph seven to protect its interest in the property. Def.'s App. 12. Thus, based on Henderson's pleadings, the court cannot say at this juncture whether Wells Fargo's decision to force-place insurance and escrow amounts for insurance on or before September 2009 to protect its rights in the property was proper under the Deed of Trust. Wells Fargo contends that Henderson admitted to defaulting in 2010 by failing to pay the increased amounts and charges demanded by it; however, this fact would seem to be irrelevant if Wells Fargo's prior force-placement of insurance and escrow of amounts paid for the insurance in September 2009 was not authorized under the Deed of Trust and preceded Henderson's default in 2010.

Wells Fargo also maintains that, because Henderson contends that it violated paragraph five of the Deed or Trust by unreasonably rejecting his choice of insurance policy, his contract claim imposes an additional noncontractual requirement that Wells Fargo must accept any insurance purchased by Henderson. Wells Fargo's argument in this regard is based on its contention that paragraph five of the Deed of Trust gave it "unfettered right to select any **_insurance policy_** it so chose." Def.'s Mot. 22. As previously noted, Wells Fargo reaches this conclusion based on its contention that paragraph five of the Deed or Trust distinguishes between "insurance company" and

**Memorandum Opinion and Order - Page 18**

"insurance policy" and only requires that its refusal of Henderson's choice of an "insurance company" be reasonable. *Id.*

The primary objective of a court in interpreting a contract is to ascertain the intentions of the parties as expressed in the contract and give effect to the parties' intentions. *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003). "To determine intent, we look to the plain language of the contract, its commercial context, and its purposes" and interpret the contract in a manner "to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose and that none [is] deemed superfluous." *Id.* (quoting *Transitional Learning Comty. at Galveston, Inc.*, 220 F.3d at 431). When a contract is expressed in unambiguous language, its terms must be given their plain meaning and enforced as written. *Reliant Energy Servs., Inc.*, 349 F.3d at 822. A contractual provision is not ambiguous merely because the parties disagree on its meaning. *Id.* "A contract is ambiguous only if its meaning is susceptible to multiple interpretations." *Id.* at 821-22. The determination whether a contract is ambiguous and the interpretation of a contract are questions of law for the court. *Id.* at 821.

Paragraph five of the Deed of Trust provides as follows with respect to a borrower's obligation to maintain insurance:

> At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender[.] **I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.** All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. **The form of all policies and**

>**renewals must be acceptable to Lender.**  Lender will have the right to hold the
>policies and renewals[.] If Lender requires, I will promptly give lender all receipts of
>paid premiums and renewal notices that I receive.

Def.'s App. 11. (emphasis added).  Wells Fargo focuses on the bolded language in this paragraph

to support its position that it has unfettered discretion to accept, reject, and select insurance. Even

if the court agrees with Wells Fargo's interpretation that the requirement of reasonableness in this

provision only extends to the lender's refusal of a borrower's choice of insurance company, the court

concludes that Henderson's claims, based on Wells Fargo's breach of this provision, do not impose

additional noncontractual requirements on Wells Fargo.  Contrary to Wells Fargo's assertion,

Henderson does not contend that Wells Fargo was required to accept any "insurance policy" he

purchased.  Henderson's pleadings instead refer in a nonspecific manner to his choice of "insurance,"

and Henderson alleges that he provided Wells Fargo with proof of "insurance coverage":

>Defendant breached the contract by unreasonably refusing Plaintiff's choice
>of **insurance** in 2009. Plaintiff provided Defendant proof of **insurance** coverage on
>at least two occasions prior to the notification that Defendant had placed their own
>insurance policy on the account. Defendant did not acknowledge receiving his proof
>of **insurance** coverage. Defendant did not provide Plaintiff with an explanation as
>to why his choice of **insurance** was insufficient or unacceptable.

Pl.'s Second Am. Compl. 7 ¶ 26.

Furthermore, while paragraph five specifies the type of insurance coverage required and

indicates that the "form" of policies and renewals must be acceptable to Wells Fargo, it cannot be

inferred from this provision that Wells Fargo had the "unfettered right to select any **insurance _policy_**

it so chose" and disregard a borrower's choice of insurance if the insurance chosen complied in every

respect with the requirements in paragraph five and was acceptable in form to Wells Fargo.  To

**Memorandum Opinion and Order - Page 20**

conclude otherwise would make paragraph seven's limitations on Wells Fargo's right to protect its interest in the property superfluous.

The court therefore determines that Henderson's claims based on breaches of the Deed of Trust do not interfere with Wells Fargo's right to specify the type of insurance coverage or the form of policies and will not subject it to additional noncontractual requirements. The circumstances or reasons behind Wells Fargo's decision to purchase insurance are not apparent from the pleadings, and the court expresses no opinion at this juncture as to whether Wells Fargo's actions violated the Deed of Trust, except to note that the issues raised by Henderson's claims concern the parties' respective rights and contractual duties under the Deed of Trust. Because it appears to the court that Henderson simply seeks to enforce the contractual duties of the parties under the terms of the loan agreements, the court concludes that Henderson's claims in this regard are not requirements or prohibitions of the sort that are preempted under section 560.2, which preempts state laws that either purport to regulate federal savings banks or otherwise materially affect their credit activities. *See Gibson v. World Savings and Loan Ass'n*, 103 Cal. App. 4th 1291, 1302 (Cal. Ct. App. 2002) (concluding that HOLA's "stated intent to preempt requirements or prohibitions imposed by state law does not reasonably extend to those voluntarily assumed in a contract" by a federal savings association since such duties are not "designed to regulate federal savings associations more than any other type of business," and do not "have a disproportionate impact on lending institutions."). Henderson's state law claims for breaches of the Deed of Trust are instead based on duties voluntarily assumed by Wells Fargo in the Deed of Trust and "only incidentally affect the lending operations of [f]ederal savings associations." *See* 12 C.F.R. § 560.2(c). Accordingly, Henderson's

**Memorandum Opinion and Order - Page 21**

contract and TDCPA claims based on alleged breaches of the Note or Deed of Trust are not preempted by HOLA.

## IV.    Conclusion

For the reasons herein stated, the court concludes that Plaintiff's remaining state law claims for breach of contract claim and violations of the TDCPA under section 392.303 and 392.304 of the Texas Finance Code are not preempted by HOLA.  The court therefore **denies** the Motion to Dismiss Second Amended Complaint (Doc. 47).  *No further Rule 12(b)(6) motions shall be filed by Wells Fargo without express leave of court*.

**It is so ordered** this 30th day of July, 2014.

Sam A. Lindsay
United States District Judge